IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| SAMMY LEVI GAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CV 113-164 |
| | ) |
| GEORGIA DEPARTMENT OF | ) |
| CORRECTIONS, et al., | ) |
| | ) |
| Defendants. | ) |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate at Augusta State Medical Prison ("ASMP") in Grovetown, Georgia, brought the above-captioned case pursuant to 42 U.S.C. § 1983. Because he is proceeding *in forma pauperis* ("IFP"), Plaintiff's complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984); Al-Amin v. Donald, 165 F. App'x 733, 736 (11th Cir. 2006) (*per curiam*). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e) & 1915A.

I.  **SCREENING OF THE COMPLAINT**

   A.  **BACKGROUND**

Plaintiff names the following as Defendants in this case: (1) the Georgia Department of Corrections; (2) the C.E.R.T. Team; (3) the Medical Director of ASMP;

(4) Warden Dennis Brown; (5) the G.B.I.; (6) the F.B.I.; (7) Internal Affairs; and (8) FNU Rovers. (See doc. no. 1, pp. 1, 4.) Taking all of Plaintiff's factual allegations as true, as the Court must for purposes of the present screening, the facts are as follows.

Plaintiff alleges that on or around March 3, 2013, C.E.R.T. Team members entered his cell, placed him in handcuffs, and dragged him in his sleep to a barber. (Id. at 5.) He was choked for five minutes, shaved, then placed back into his cell. (Id.) Subsequently, he was denied any medical treatment for three weeks, despite asking Officer Wilson, Nurse Benifield, and Nurse Jim, among others, for help several times and being told that a "P.A." would see him. (Id.) No photographs of his injuries were taken and no incident report was written for three weeks. (Id.) Additionally, there has been no "Internal Affairs" investigation, nor has the F.B.I. or G.B.I. responded to his letters. (Id.)

Plaintiff signed his complaint on July 31, 2013, and it was filed by the Clerk of Court on September 11, 2013. (Id. at 6.) With regard to utilizing the prison grievance procedure, Plaintiff states he wrote a grievance, but as of the date he signed his complaint he had not turned it in "due to other incidents". (Id. at 3.) However, he planned to turn in the grievance on August 7, 2013. (Id.) Plaintiff states that he did not write the grievances sooner because "over a period of about 3 months I was writing the warden and attorneys" and because of unspecified "other incidents." (Id. at 4.) In his request for relief, Plaintiff seeks monetary relief, and that his record be sealed he receive a full pardon "for each incident." (Id. at 6.)

B.  DISCUSSION

1.  Lack of Exhaustion

Plaintiff's complaint should be dismissed because of his failure to exhaust administrative remedies. Section 1997e(a) of the Prison Litigation Reform Act

("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (*per curiam*); Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998).

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005).

Also, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008) (*per curiam*); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (*per curiam*).[1] Finally, under the PLRA, the Court has no discretion to inquire

---

[1] Other federal circuits have similarly held that the PLRA does not allow a plaintiff to exhaust administrative remedies while his case is pending. See McKinney v. Carey, 311 F.3d 1198, 1200 (9th Cir. 2002); Medina-Claudio v. Rodriguez-Mateo, 292 F.3d 31, 36 (1st Cir. 2002); Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001); Lee v. Lappin, No. 04-5008, 2004 WL 1701045 (D.C. Cir. July 29, 2004); Freeman v. Francis,

3

into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

Because of the date of the incident that Plaintiff alleges, the administrative grievance procedure applicable in this case is governed by the version of the Georgia Department of Corrections' Standard Operating Procedure ("SOP") IIB05-0001 that became effective on December 10, 2012. Inmates are encouraged to resolve complaints on an informal basis before filing a grievance, however this step is not required. SOP IIB05-0001 § VI(A)(4). The administrative remedies procedure commences with the filing of the Original Grievance. The inmate has ten calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the Original Grievance and give it to a Counselor. SOP IIB05-0001 § VI(D)(1)-(5). Once the Counselor gives the grievances to the Grievance Coordinator, they will screen it in order to determine whether to accept it or recommend that the Warden reject it. SOP IIB05-0001 § VI(D)(5). If the Warden rejects the grievance, the inmate may appeal the rejection to the Central Office. SOP IIB05-0001 § VI(D)(5)(f).

If the Grievance Coordinator accepts the grievance or the Warden rejects the coordinator's recommendation, the Grievance Coordinator will appoint a staff member to investigate the complaint. SOP IIB05-0001 § VI(D)(6). After the staff member prepares a report, the Grievance Coordinator submits a recommended response to the Warden. Id. The Warden or their designee reviews the grievance, the report, and the recommendation

---

196 F.3d 641, 645 (6th Cir. 1999); Perez v. Wisconsin Dep't of Corr., 182 F.3d 532, 538 (7th Cir. 1999).

and issues a decision in writing. Id. The Warden has 40 days from the date the offender gave the Original Grievance to the Counselor to deliver a decision. SOP IIB05-0001 § VI(D)(7). The inmate then has 7 calendar days from the date they receive the response to file a Central Office Appeal to the Office of the Commissioner; the Office of the Commissioner or his designee then has 100 calendar days after receipt of the grievance appeal to respond. SOP IIB05-0001 § VI(E). The grievance procedure is terminated upon the issuance of a response from the Commissioner's Office. See id.

Here, it is apparent from Plaintiff's complaint that he did not exhaust his administrative remedies prior to the commencement of this case, as is required under the PLRA. Plaintiff failed to even initiate grieving the issue of his alleged assaults, much less to use all steps of the available exhaustion procedure. Woodford, 598 U.S. at 93. Plaintiff states that he did not even plan to turn in a grievance until a week after he signed his complaint. (Doc. no. 1, p. 3.) However, in order to properly exhaust, Plaintiff must use all steps of the available exhaustion procedure. Woodford, 548 U.S. at 93. Moreover, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure *before* initiating this suit. Higginbottom, 223 F.3d at 1261. It is plain from the face of his complaint that Plaintiff failed to even initiate the grieving process prior to signing his complaint. (Id. at 3, 6.)

Additionally, because of the discrepancy in dates between when Plaintiff signed his complaint and when the Clerk of Court filed the complaint, even if Plaintiff had filed his grievance in accordance with the statement in his complaint, Plaintiff still failed to properly exhaust his claims in accordance with the SOP. Woodford, 548 U.S. at 93. In order to properly grieve the issue, Plaintiff should have filed a formal grievance for the

5

March 3, 2013 incident ten calendar days from "the date [Plaintiff] knew, or should have known, of the facts giving rise to the grievance." SOP IIB05-0001 § VI(D)(1)-(5). Plaintiff should have then followed the procedures established by SOP IIB05-0001 as discussed above and appealed the denial to each available administrative level. However, Plaintiff states that he did not even plan to turn in the grievance until over five months after the incident occurred. (Doc. no. 1, p. 3.) Therefore, Plaintiff's complaint should be dismissed without prejudice.[2]

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's complaint be **DISMISSED** without prejudice for failure to exhaust administrative remedies and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 12th day of November, 2013, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE

---

[2] The Court recognizes that the Supreme Court held that under the PLRA, exhaustion of administrative remedies is an affirmative defense. Jones v. Bock, 549 U.S. 199, 215 (2007). However, if the allegations in the complaint, taken as true, demonstrate that a prisoner's claims are barred by an affirmative defense, the complaint is subject to dismissal for failure to state a claim upon which relief can be granted. Id. at 14; see also Clark v. Georgia Bd. of Pardons and Paroles, 915 F.2d 636, 640-41 (11th Cir. 1990) (explaining that district court may dismiss prisoner's complaint "if [it] sees that an affirmative defense would defeat the action," including the prisoner's failure to exhaust "alternative remedies"). Therefore, because it is clear from the face of Plaintiff's complaint that he failed to exhaust his administrative remedies, the Court can properly recommend that Plaintiff's complaint be dismissed. See Anderson v. Donald, 261 F. App'x 254, 256 (11th Cir. 2008) (*per curiam*) (finding that the district court properly dismissed the plaintiff's complaint because the allegations in the complaint sufficed to establish that Plaintiff failed to exhaust his administrative remedies).